```
         IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF GEORGIA
                     DUBLIN DIVISION

CAMERON R. O'NEAL,              *
                                *
     Plaintiff,                 *   CIVIL ACTION FILE
                                *
vs.                             *   NO. _____
                                *
ALLEN HARRIS, in his            *
individual capacity, and        *
CITY OF DUBLIN, GEORGIA,        *   JURY TRIAL DEMANDED
                                *
     Defendants.                *
```

**COMPLAINT FOR DAMAGES**

NATURE OF THE CASE

1.

This is a civil rights case. Deputy Allen Harris performed a constitutionally incompetent investigation which directly caused the unlawful arrest and pretrial detention of Plaintiff Cameron O'Neal. O'Neal seeks monetary damages, attorney's fees and costs, and a trial by jury.

PARTIES

2.

Plaintiff CAMERON R. O'NEAL is a resident of Henry County, Georgia.

3.

Defendant ALLEN HARRIS was employed by the City of Dublin's police department, and acted under color of state law, at all times relevant to this complaint. Detective

Harris is sued in his individual capacity.

4.

Defendant CITY OF DUBLIN, GEORGIA ("the City") is a political subdivision of the State of Georgia, which has the capacity to sue and be sued.

## VENUE

5.

All acts or omissions alleged in this complaint occurred in the Southern District of Georgia, where at least one defendant resides, and therefore venue is properly within this district under 28 U.S.C. § 1391(b)(2).

## JURISDICTION

6.

Jurisdiction for this suit is conferred in part by 42 U.S.C. § 1983, which provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory, or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

7.

Under 28 U.S.C. §§ 1331 and 1343(a)(3)&(4), the Court can entertain an action to redress a deprivation of rights

guaranteed by the United States Constitution, and the Court has jurisdiction under 28 U.S.C. § 1367 to hear an action to redress a deprivation of rights guaranteed by the laws and the Constitution of the State of Georgia.

## FACTS

### The underlying crime

8.

On August 29, 2021, City of Dublin police officers responded to a report of an aggravated assault with injuries in the area of Dewey Street and West Mary Street.

9.

The police determined that the suspect in the shooting was driving a white Toyota Corolla, which belonged to Chelsea Chastang, a resident of one of the nearby apartments.

10.

On August 30, Detective Allen Harris and Sergeant Eric Roland interviewed Chastang, who told them that she allowed her friend "Cameron O'Neil" to borrow her Toyota Corolla.

11.

When Det. Harris heard this, he said that he was familiar with Cameron O'Neil.  Det. Harris did not request, and Chastang did not offer, any other identifying information about her friend Cameron O'Neil.

12.

On September 16, 2021, notwithstanding that Det. Harris had nothing other than the name "Cameron O'Neil," he prepared an affidavit in support of an arrest warrant for Cameron R. O'Neal (using O'Neal's date of birth and social security number) which provided in full:

> The accused did assault with the intent to murder, to rape, or to rob, or with a deadly weapon, or with an object which used offensively against a person is likely to or does result in a serious bodily injury, or strangulation, to-wit: on 8/29/2021, at about 7:15 pm, affiant investigated a shooting at the parking area on Dewey Street, Vinson Village, Dublin, Laurens County, Georgia. During the course of the investigation, affiant determined that the victim, Denzel Dixon, and his girlfriend, Yvonda Dudley, were driving in the area of Dewey St. When a white vehicle pulled in front of them. A black male got out of the white car with a long gun and shot at the victim while he was running toward the apartments. The victim received gunshot wounds to the ankle and to his calf.
>
> Further investigation revealed through the review of security video images the identity of the owner of the white vehicle seen in the area of Dewey Street was determined. Additional video images revealed that the accused picked up the white vehicle at Best Buy, workplace of the owner, and drove to the owner's residence. The accused is also seen on additional video images getting a long gun from the trunk of the white vehicle and getting into the passenger seat. The white vehicle occupied by the accused is also seen on video images rapidly leaving the area of Dewey St. At the approximate time of the shooting.

13.

The warrant was falsely or recklessly sworn out because

O'Neal was not the person who committed those crimes; O'Neal was living in Marietta, Georgia at the time, working as a laborer.

14.

A few weeks later, on October 21, Det. Harris met with the victim of the shooting, Denzel Dixon, who told him that he and "Cam" (meaning, Cameron O'Neil) had been friends, but had a falling out over a woman.

15.

Although both Chastang and Dixon personally knew the wanted Cameron O'Neil, Det. Harris failed to confirm with either witness that O'Neal (whom the detective found in a government database) was, in fact, the same person the witnesses knew.

16.

Det. Harris gathered no identifying information about "Cam" from the witnesses, such as: a photograph; a physical description (e.g., height, weight, birth date, or any distinguishing features, like tattoos, scars, or piercings); any residence or work information (street address, city, or even state); social media presence; or driver's license information.

17.

The wanted Cameron O'Neil has tattoos all over his

back; Plaintiff O'Neal has no tattoos on his back.

18.

Upon information and belief, both before and after Det. Harris searched for the wanted "Cameron O'Neil," he did not take any steps to ensure that the warrant was for the "Cameron O'Neil" who the witnesses knew and who committed the crimes.

### Plaintiff O'Neal is arrested

19.

In December 2022, when Cameron O'Neal was living in Cobb County, his ex-girlfriend called and asked if she could retrieve some personal items from his apartment. O'Neal agreed but requested that she be accompanied by law enforcement.

20.

On December 23, O'Neal's ex-girlfriend arrived at his apartment with Cobb County police officers who, after asking for O'Neal's identification, arrested him on the warrant that Det. Harris procured out of the City of Dublin.

21.

O'Neal was in shock because he knew that he had not committed any crime; he cooperated fully with the officers, hoping that the mistake would be cleared up quickly.

22.

O'Neal was taken to the Cobb County Jail. There he explained that they had arrested the wrong person. Upon information and belief, one or more officials at the Cobb County Jail immediately informed the City of Dublin police department that O'Neal was claiming to be a victim of misidentification.

23.

That day (December 23) O'Neal's family began calling the City of Dublin police department and asking why and how O'Neal had been arrested and jailed in Cobb County.

24.

A detective with Dublin police department told one of O'Neal's family members that, if the family could find Chastang and win her cooperation, it might be enough to get O'Neal out of jail.

25.

O'Neal remained in the Cobb County Jail for several days, waiting for City of Dublin police department either to confirm the mistaken identity or to transport him to Dublin.

26.

Meanwhile, O'Neal's family contacted Chastang. They reached Chastang, who confirmed that the police had arrested the wrong person and offered to help O'Neal's family in any

way she could.

27.

Upon information and belief, a City of Dublin police detective contacted Chastang (who, by this time, was living in Atlanta and knew the wrong person was in custody), about identifying O'Neil.  Chastang told the detective that the City had the wrong person.

28.

On December 28, because the City of Dublin police department would not pick up O'Neal (for reasons unknown) from the Cobb County Jail, a Laurens County Sheriff's Office deputy picked up O'Neal and transported him to the Laurens County Jail.  O'Neal again explained that he was not the wanted person.

29.

Later that day, O'Neal was removed from his jail cell and told that detectives with the Dublin police department were coming to "ID" him.  O'Neal waited for a couple of hours in the front area of the jail, but the detectives never showed, and he was placed back into his jail cell for the night.

30.

O'Neal remained in jail until he was released on December 29.

31.

The criminal case (#2021-1507) against O'Neal was dismissed on January 3, 2023.

32.

As of today, the City of Dublin police have not arrested the wanted Cameron O'Neil, who remains at large, while Plaintiff O'Neal has experienced at least one extended traffic stop based on the warrant Det. Harris procured.

## COUNT 1

### 42 U.S.C. § 1983: Malicious Prosecution

### in violation of the Fourth Amendment

(Defendant Harris)

33.

O'Neal incorporates paragraphs 1 through 32 here by this reference.

34.

Det. Harris initiated a criminal prosecution against O'Neal alleging a violation of O.C.G.A. § 16-5-21, Aggravated Assault, and he knew or should have known that no arguable probable cause existed to believe that O'Neal had committed any crime recognized by law.

35.

Det. Harris initiated the arrest and continued the prosecution of O'Neal by making false and reckless

statements and material omissions in his arrest warrant application, thus displaying malice and a reckless disregard for O'Neal's civil rights.

36.

The arrest and prosecution forced O'Neal to spend considerable time in jail.

37.

This criminal prosecution terminated favorably for O'Neal.

38.

At all times relevant to this action, the law was established with obvious clarity that arresting a citizen without probable cause and depriving a citizen of his liberty violates the Fourth Amendment to the United States Constitution.

39.

As a result of his arrest and prosecution, O'Neal suffered emotional, mental, and financial injury, entitling him to recover nominal, compensatory, and punitive damages against the defendant in an amount to be determined by the enlightened conscience of the jury.

COUNT 2

Municipal Liability - Law Enforcement Activity

(The City)

40.

O'Neal incorporates paragraphs 1 through 32 here by this reference.

41.

This Count is alleged against the City of Dublin.

42.

O'Neal timely provided ante litem notice to the City.

43.

The City has purchased liability insurance from Georgia Interlocal Risk Management Agency ("GIRMA") that provides coverage and indemnification for liability arising from law enforcement operations, including errors and omissions. That policy was in effect at all times relevant to this complaint.

44.

The purchase of liability insurance constitutes a limited waiver of sovereign immunity by the City of Dublin.

45.

During the course of his employment and while fulfilling his official duties, Det. Harris was reckless or negligent in preparing an arrest warrant application

accusing the wrong person of the crime.

46.

The City is liable for the tortious actions of Det. Harris under the doctrine of respondeat superior for violations of State law. Under that doctrine, the City is not entitled to present a defense of official immunity.

COUNT 3

O.C.G.A. § 13-6-11: Attorney's Fees

(The City)

47.

O'Neal incorporates paragraphs 1 through 32 here by this reference.

48.

By the acts and omissions specified above, as well as other conduct, the City has acted in bad faith, has been stubbornly litigious, and has caused O'Neal unnecessary trouble and expense.

49.

O'Neal is entitled to recover his actual expenses of litigation, including attorney's fees, from the City.

WHEREFORE, O'Neal respectfully requests the following relief:

(a) That as to Counts 1 and 2 the Court award O'Neal

        damages in an amount to be determined by the enlightened conscience of an impartial jury;

(b) That as to Count 3 the Court grant O'Neal his reasonable costs and attorney's fees in bringing this action in an amount to be determined at trial;

(c) That O'Neal be granted a trial by jury on all issues so triable; and

(d) That O'Neal be granted such other and further relief as this Court deems just and proper.

        Respectfully submitted,

BY: /s/ Cary S. Wiggins
Cary S. Wiggins
Ga. Bar No. 757657

Wiggins Law Group, LLC
Suite 401
260 Peachtree Street, NW
Atlanta, Georgia 30303
Telephone: (404) 659-2880
cary@wigginslawgroup.com

BY: /s/ William Sussman
William J. Sussman
Ga. Bar No. 693000

William J. Sussman, P.C.
347 Greene Street
Augusta GA 30901-1698
Telephone: (706) 724-3331
wjslaw@mindspring.com